3   513
a63L 571

MARY DEARE, Executrix of WILLIAM P. DEARE, v. HANNAH
CARR, Executrix and Devisee of ANN WHARTON, et al.

If a mortgage creditor becomes the purchaser of the mortgaged premises at
sheriff's sale, under an execution issued upon a judgment rendered for the
mortgage debt, the debt is extinguished to the amount of the purchase
money.

So if the debt be due to husband and wife, or to joint creditors, and one pur-
chases the mortgaged premises at sheriff's sale under an execution for the
debt, upon the acceptance of the deed the amount bid operates as a pay-
ment *pro tanto*.

If a judgment creditor, having the judgment debt secured by a mortgage, be-
comes a purchaser of the equity of redemption subject to incumbrances in-
tervening between his mortgage and judgment, through mistake or igno-
rance of the existence of his own mortgage, equity will not relieve.

The mistake or ignorance for which a contract will be relieved against in equi-
ty, must be mistake or ignorance of a material fact, essential to its charac-
ter, and a material cause of its concoction.

The fact must also be such as the party could not, by reasonable diligence,
have gotten knowledge of, when he was put upon inquiry.

When the fact is equally unknown to both parties, or when each has equal
and adequate means of information, and both have acted in good faith, the
court will not interfere.

*Nevius*, for complainant.

*Kinsey*, for defendants.

THE CHANCELLOR. On the twenty-fourth of November,
eighteen hundred and seventeen, Andrew Rowan, late of the
county of Middlesex, being seized of a certain lot of land of
about eleven acres, with a tavern upon it, in the township of
East-Windsor, in said county, gave a mortgage upon it to Wil-
liam P. Deare, to secure the payment of three hundred dollars.

On the sixth of March, eighteen hundred and nineteen, he
gave to him another mortgage on the said tavern lot and another
lot of about thirteen acres and an half, in the same township, to
secure the payment of four hundred dollars.

On the first of April, eighteen hundred and twenty-three, he
65

executed to him a third mortgage on both lots, to secure the payment of three hundred dollars.

Besides these, there was a mortgage on the thirteen and an half acre lot, for one hundred and fifty dollars, dated the twenty-fourth of April, eighteen hundred and four, which was subsequently assigned to the said William P. Deare.

The complainant's bill is filed upon these four mortgages, to foreclose the equity of redemption, and for a sale of the premises.

On the ninth of November, eighteen hundred and thirty, Charles H. Wharton and Ann Wharton his wife, recovered a judgment against Andrew Rowan, in the supreme court, for nine hundred and fourteen dollars and thirty cents; and an execution issued on the judgment, by virtue of which Andrew Snowhill, sheriff of the county of Middlesex, levied on the two lots above mentioned, and on a wood lot containing about fifteen acres. These were subsequently sold at sheriff's sale. The wood lot brought six hundred dollars, and the tavern house and lot three hundred dollars. Both these were purchased by Alexander Hamilton, as agent for the plaintiffs in execution. The thirteen and an half acre lot was purchased by Samuel S. Deare, for five hundred dollars. Conveyances were subsequently made; one to Charles H. Wharton, for the two lots purchased in his behalf, and another to Samuel S. Deare, who has since conveyed to Elias Tice. After the purchase, Charles H. Wharton died, and his wife, as the survivor, became entitled, as it is claimed, to the judgment, or what might be due upon it; and she afterwards departed this life, having by will disposed of her property to Hannah Carr, and appointed her executrix and trustee.

Upon this state of the facts, no difficulty presents itself. Of the judgment and execution in favor of Dr. Wharton and wife, against Rowan, six hundred dollars was paid by the purchase of a wood lot, which was not covered by the complainant's mortgages. The purchase of the tavern lot extinguished three hundred dollars more. To this is to be added the five hundred dol-

[Deare v. Carr et al.]

lars, for which the thirteen and an half acre lot was sold to Samuel S. Deare. If any thing is still due on the judgment, it would seem that the mortgaged property is not bound for the payment, or at all events, that the mortgages of the complainant must be first satisfied.

The answer of Mrs. Carr, however, sets up, by way of defence, that all the proceedings of Dr. Wharton and wife, in obtaining the judgment at law, and in purchasing the two lots under the execution, originated in mistake, and ignorance of their own situation and rights; that they had in fact, at the time of the judgment and sale, a mortgage on the wood lot of fifteen acres, and also on the tavern house and lot of eleven acres, of a prior date to any of the complainant's mortgages, given to the said Charles H. Wharton and Ann his wife to secure the payment of a bond and sealed bill, which had been assigned to the said Ann as part of her portion of her father's estate. There can be no doubt of the truth of these allegations. The mortgage is produced, dated in April, eighteen hundred and ten, regularly acknowledged and registered—and was, of course, the first lien on the tavern house and lot. The mistake is satisfactorily accounted for by the fact that the mortgage, after being registered, was never taken from the clerk's office by Dr. Wharton. It remained there till the year eighteen hundred and thirty-four, and was probably forgotten. Its existence could not have been known to the counsel who conducted the suit at law, or a different course would have been pursued. Under these circumstances the defendant, Mrs. Carr, who is the only one of the defendants having any interest, insists that she ought not to be prejudiced by the mistake. So far as concerns the wood lot of fifteen acres, which was not covered by the complainant's mortgage, and which was purchased by Dr. Wharton for six hundred dollars, she is willing that the amount be credited on the judgment. As to the tavern lot, purchased for three hundred dollars by Dr. Wharton, no possession has ever been taken under the sale, and she submits, that as the purchase was made under a total misapprehension of right, she ought not to be compelled to credit the

three hundred dollars on the judgment, but that the lot should be resold, and the balance of the judgment, after deducting the six hundred dollars, be first satisfied out of the proceeds, and the residue be applied to pay the complainant's mortgage.

As the case now stands, Dr. Wharton is to be considered as a purchaser at sheriff's sale of the mortgaged property, or rather of the equity of redemption, under his own judgment. Upon general principles, the debt is extinguished to the amount of the purchase money. By the purchase, and the acceptance of a deed, the amount bid operates as a payment *pro tanto ;* and it must be so considered in this case, unless the peculiar circumstances set up by this defendant shall operate to take it out of the general rule. The case is not materially varied, as I apprehend, by the fact that this was a joint debt to Mr. and Mrs. Wharton, and the mortgage a joint mortgage. The suit was on the bond, to recover the debt, and not on the mortgage, to get possession of the land, or to foreclose the equity of redemption. If they are to be considered in the light of joint creditors, having a joint judgment and execution, either one had a right to receive the debt or release it. A payment to one was a payment to both. The purchase of the tavern property for three hundred dollars, and the acceptance of the title, was equivalent to payment on the part of Rowan to Dr. Wharton, and Mrs. Wharton and her executor is precluded from denying it. If they are considered as husband and wife, and if this was the wife's property originally, the suing out of the execution on the judgment, according to some of the authorities, divested the right of the wife, and gave possession to the husband. If he had died after execution issued, his representatives, and not the wife, would have been entitled to the benefit of it; *Bond* v. *Simmons,* 3 *Atk.* 20 ; 1 *Roper's Husb. and Wife,* 209. But however this may be, it is clear that the husband had a right to receive the money. Even if it had been owing to the wife alone, in her own name, he would have had this right, and the receipt would have divested her title. So he could have assigned it : *Bash* v. *Dalway,* 3 *Atk.* 533; *Golds.* 160; *Moore,* 452; *Doswell* v.

[Deare v. Carr et al.]

*Earle*, 12 *Ves.* 473; 1 *Roper*, 216. Or he might have released and discharged it: 2 *Kent's Com.* 114.

According to the showing of the defendant, Mrs. Carr, this debt from Rowan was not due to Mrs. Wharton, *dum sola.* It was property that came to the wife after marriage. It became the property of the husband immediately, and the representative of the wife can have no just ground of complaint, that Dr. Wharton acted as he did in the premises, or that he and those claiming under him should now be held bound by his act.

The mortgage estate was, no doubt, a joint estate, so far as such an estate can vest in husband and wife. They were both seized of the entirety, and the survivor was entitled to the estate. It is now vested in the defendant, Mrs. Carr, for it has never been extinguished; but it is worth no more than the balance due on the execution, that being the balance of the debt the mortgage was intended to secure, and may be defeated by the payment of that balance.

The question, then, recurs; Can Dr. Wharton, or those claiming under him, be relieved against his mistake— or rather, his ignorance—and be placed in the same situation as before the purchase and acceptance of the deed?

Upon this point, I am brought to the conclusion that this court has no power to give aid to the defendant. There is no pretence of fraud or misrepresentation on the part of the vendor. Both parties were alike ignorant of the fact, that there was a mortgage in favor of Dr. Wharton and wife, prior to the judgment. The sale and purchase were in good faith, and the means of information were open to both. Under these circumstances, it appears to be settled that a court of equity will not interfere.

There are a great variety of cases in which relief will be afforded; so many, indeed, as to have given rise to the general rule, that an act done, or a contract made, under a mistake or ignorance of a material fact, is voidable and relievable in equity. The rule has a number of important qualifications or exceptions, and these are often as important as the rule itself. The fact as to which mistake or ignorance is alleged, must be a ma-

terial fact, essential to its character, and an efficient cause of its concoction : 1 *Evans Pothier on Oblig.* Pt. 1, ch. 1, art. 9, n. 17, 18 ; *Bingham* v. *Bingham*, 1 *Ves. sen.* 126.   And even that is not in all cases sufficient.   The fact must also be such as the party could not, by reasonable diligence, get knowledge of when he was put upon inquiry ; for relief will not be afforded to culpable negligence,: 1 *Fonb. Eq.* B. 1, ch. 3, s. 3 ; *Penny* v. *Martin*, 4 *John. Chan. R.* 566.   And where the fact is equally unknown to both parties ; or where each has equal and adequate means of information, and both have acted in good faith, the court will not interfere : 1 *Pow. on Cont.* 200 ; 1 *Fonb. Eq.* B. 1, ch. 2, s. 7, note (*v.*)

These material qualifications render it neceesary that the rule should be received with caution, and that cases supposed to be within.it should be carefully examined.

Justice Story, in his late treatise on equity jurisprudence, remarks on this subject, that the general ground on which all these distinctions proceed is, that mistake or ignorance of facts in parties is a proper subject of relief, only when it constitutes a material ingredient in the contract of the parties, and disappoints their intentions by a mutual error ; or where it is inconsistent with good faith, and proceeds from a violation of the obligations which are imposed by law upon the conscience of either party. But where each party is equally innocent, and there is no concealment of facts which the other party has a right to know, and no surprise or imposition, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference.   It is strictly *damnum absque injuria :* 1 *Story's Eq.* 163.

The same conclusion is drawn by Jeremy, in his treatise on *Equity Jurisdiction*, 366 ; and is recognized by Sugden, in his *Law of Vendors*, 9th edit. 255.

There are some cases which hold a contrary doctrine.   The most important is one in the exchequer, *Hitchcock* v. *Giddings*, 4 *Price*, 135 ; in which chief baron Richards.relieved from a contract on the ground of mistake, although there was no fraud

[Deare v. Carr et al.]

from knowledge, or concealment on the part of the vendor. Some broad doctrines are assumed in the opinion, which need confirmation. Lord Eldon subsequently expressed considerable doubt as to their soundness: *Sugd.* 255; and I think the authority of the case is much shaken, when it is seen that the chief baron puts himself, at least in one part of his opinion, on the ground that it was a case of fraud, though of entire ignorance on both sides.

In *Skillman and Wife* v. *Teeple, Saxt.* 232, the contract was set aside, not simply on the ground of mistake, but because the party was influenced by the advise of interested persons to make an arrangement which proved destructive of her claims. This was held sufficient to warrant an interference.

Without going further into the general question, I conclude that the defendant is not entitled to the relief she seeks—the case resting on ignorance alone, and there being no imputation of fraud.

There are other circumstances which satisfy me that this conclusion is right, and that the claim of the defendant should be dismissed. One is that the mortgage, of which Dr. Wharton was ignorant, was his own mortgage, given to himself and wife. It was in his own possession in law, and under his own control. And yet so great was his negligence, that the instrument was suffered to lie in the clerk's office till actually forgotten. A party who manifests so much inattention to his own concerns, cannot complain if a court of equity shall refuse him any assistance.

Another circumstance is, that the mortgage being registered, was legal notice of its existence to the whole world, and certainly to the mortgagee as well as any one else. If a stranger purchase property at sheriff's sale, subject to legal incumbrances on record, and makes no inquiry whatever about them, can he come, after paying the purchase money and taking a deed, and avoid the whole on the ground of ignorance? Such a prayer could not be entertained for a moment. On what better ground does the defendant stand? Has she as much equity?

The last I will advert to is, that the complainant in this cause

[Deare v. Carr et al.]

was no party to any of these transactions. She is only consequentially interested. The situation of advantage which she occupies in reference to the defendant, was brought about by the voluntary act of Dr. Wharton, and not through her interference. She is entitled to hold it unless a clear case of equity is made out against her—which has not been done.

Let there be a decree for a sale of the mortgaged premises, to pay, 1. The complainant's costs ; 2. The balance of defendant's mortgage after deducting the purchase money, or amount of the first sale ; 3. The complainant's debt ; and 4. The costs of the defendant.

Decree accordingly.